IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID MAY,

|                         |                          |
|-------------------------|--------------------------|
| Plaintiff,              | CV-07-0899-ST            |
| v.                      | FINDINGS AND RECOMMENDATION |

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, David May ("May"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("Act"), 42 USC §§ 401-33, 1381-83f. This court has jurisdiction under 42 USC §§ 405(g) and

421(d). For the reasons that follow the Commissioner's decision should be REVERSED and this

case REMANDED for further proceedings.

1 - FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

May filed applications for Title II and Title XVI benefits on April 4, 2003, with a protective filing date of March 17, 2003.  Tr. 60-62, 441-46.   His date last insured was September 30, 2007.  He alleged disability beginning December 15, 2002, based on depression, panic disorder, anxiety, and shaking.  Tr. 60, 84.  The applications were denied initially and on reconsideration.  Tr. 36-39, 42-44, 448-51, 453-56.

Administrative Law Judge ("ALJ") Catherine R. Lazuran held a hearing on July 21, 2005, at which she heard testimony from May who was represented by counsel and from a vocational expert ("VE"), Paul Morrison, Ph.D.  Tr. 572-628.  In a decision dated January 27, 2006, the ALJ determined that May retained the ability to perform a reduced range of medium exertion work that existed in significant numbers in the national economy, including the jobs of produce sorter and solderer.  Tr. 16-33.  Therefore, the ALJ found May not disabled within the meaning of the Act.  Tr. 31-33.  May sought administrative review before the Appeals Council and submitted additional evidence in support of his claim.  Tr. 4, 11-12.  The Appeals Council denied review (Tr. 5-8), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  20 CFR §§ 404.981, 416.1481, 422.210, *Sims v. Apfel*, 530 US 103, 106-07 (2000).

## FACTUAL BACKGROUND

### I.    Education and Work History.

Born in 1961, May was age 41 at the alleged date of onset and age 43 at the administrative hearing.  Tr. 60.  He obtained a high school education.  Tr. 90.  In the past, May has worked as a bingo parlor floor worker, courier, order taker, warehouse worker, salesperson,

patio cover and awning installer, security guard, pizza delivery driver, and restaurant manager.

Tr. 85, 621-23.  He last worked in December 2002 taking phone orders for a pizza restaurant.

Tr. 578.  Although May's application states that he became disabled on December 15, 2002, due

to depression, panic disorder, anxiety and shaking, he claimed at his administrative hearing that

chronic pain in his neck, back, and liver kept him from working.  Tr. 594.

## II.    **Medical History**

May has an extensive treatment history for depression, anxiety, post-traumatic stress

disorder ("PTSD"), and chronic pain in his liver, neck, and back. *See* Tr. 237 (back pain), 195-97

(liver pain, anxiety, PTSD), 213-21 (depression, panic disorder, PTSD), Tr. 242-43 (depression,

PTSD, anxiety).  He also has a long history of drug and alcohol abuse and is a chronic user of

prescription pain killers, primarily Vicoden and marijuana prescribed pursuant to the Oregon

Medicinal Marijuana Program.  Tr.  242-43, 195-96 (Cannabis use), 233, 249 (chronic Vicoden),

Tr. 209 (history of liver pain, alcohol and marijuana abuse, and regimen of antidepressants).  His

struggles with mental illness and substance abuse have resulted in at least five hospitalizations

and one visit to the emergency room from 2003 to 2006 for instances of acute symptoms of

depression, anxiety, and suicidal or homicidal ideation.  Tr. 213-21 (2/10-13/03), 205-12 (5/27-

31/03), 495-516 (5/24-26/04), 466-67 (½4/06), 553-63 (8/29-30/06), 566-68 (10/6-10/06).  In

addition to his drug and alcohol use, May has taken an extensive variety of anti-anxiety, anti-

depressant and pain management medications.  *See* Tr. 231, 226, 503, 477, 560.  More recently,

May has manifested symptoms of a chronic pain disorder and has been diagnosed with

fibromyalgia.  Tr. 463, 540, 560-61, 569-71.

3 - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

### I.    Five-Step Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  20 CFR §§ 404.1520(b), 416.920(b).  If so, then the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment."  20 CFR §§ 404.1520(c), 416.920(c).  If not, then the claimant is not disabled.

At step three, the Commissioner determines whether the severe impairment "meets or equals" one of the impairments listed in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing of Impairments").  20 CFR §§ 404.1520(d), 416.920(d).  If so, then the claimant is disabled.

If the analysis proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC").  The RFC is an assessment of work-related activities the claimant can perform on a regular and continuing basis, despite the limitations

imposed by his impairments.  20 CFR §§ 404.1545(a), 416.920(e), 416.945; Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

Using the RFC, the Commissioner determines at step four whether the claimant can

perform past relevant work.   20 CFR §§ 404.1520(e), 416.920(e).  If so, then the claimant is not

disabled.

Finally, at step five, the Commissioner determines whether the claimant is able to

perform other work in the national economy.  20 CFR §§ 404.1520(f), 404.1566, 416.920(f).  If

not, then the claimant is disabled.

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at

1098.  However, at step five, the burden shifts to the Commissioner to show that the claimant

can perform jobs that exist in significant numbers in the national economy.  *Id.*

## II.     Role of Alcoholism and Drug Addiction

Where there is medical evidence of alcoholism or drug addiction, the Commissioner

"must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor

material to the determination of disability."  20 CFR §§ 404.1535(a), 416.935(a).  This is

pursuant to a provision added by the Contract with America Advancement Act, Pub. L. No. 104-

121, 110 Stat. 847 (March 29, 1996), that an "individual shall not be considered to be disabled

for purposes of [Title II or XVI of the Act] if alcoholism or drug addiction would (but for this

subparagraph) be a contributing factor material to the Commissioner's determination that the

individual is disabled."  42 USC §§ 423(d)(2)(C), 1382c(a)(3)(J).  Therefore, the "key factor" the

Commissioner "will examine in determining whether drug addiction or alcoholism is a

contributing factor material to the determination of disability is whether [the Commissioner]

5 - FINDINGS AND RECOMMENDATION

would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 CFR §§ 404.1535(b)(1), 416.935(b)(1).

The materiality of the claimant's alcoholism or drug addiction is analyzed only after the ALJ finds, pursuant to the sequential analysis, that the claimant is disabled. *Bustamante v. Massanari*, 262 F3d 949, 955 (9th Cir 2001). If the ALJ finds the claimant not disabled under the ordinary disability analysis, consideration of the impact of the claimant's substance abuse is unnecessary. *Id.* It is the claimant's burden to prove that alcohol and drug addiction was not a contributing factor material to a finding of disability. *Parra v. Astrue*, 481 F3d 742, 748 (9th Cir 2007), *cert denied*, 128 S Ct 1068 (Jan. 14, 2008).

## ALJ'S FINDINGS

At step one, the ALJ found that May had not engaged in substantial gainful activity[1] at any time since the alleged date of onset. At step two, the ALJ found that May suffered from several severe impairments including a depressive disorder, an anxiety disorder, and drug and alcohol addiction. The ALJ found that May's other physical impairments were non-severe, including May's history of liver abscess, and neck and back strain. At step three, the ALJ found that May had no impairment or combination of impairments that met or medically equaled the criteria of any of the listed impairments. With his drug and alcohol abuse, May retained the RFC to perform medium exertion work, but not full-time due to his non-exertional limitations. As a result, the ALJ found that May could not perform his past relevant work.

However, the ALJ concluded that May's use of drugs and alcohol was a contributing factor to this determination. Excluding the effects of his drug and alcohol use, the ALJ found

---

[1] "Substantial gainful activity means work that – (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 CFR §§ 404.1510, 416.910.

that May retained the RFC to perform medium exertion work on a full-time basis.  Considering

this RFC, the ALJ determined that May could perform his past relevant work as an order taker.

However, the record was not clear whether May performed this job long enough to constitute

substantial gainful activity.  Therefore, the ALJ also considered at step five whether any jobs

existed in significant numbers in the national economy which May could perform.  Considering

May's RFC, level of education, work history, and transferable skills, the VE opined that May

could perform the jobs of produce sorter and solderer.  Accepting this testimony, the ALJ found

May not disabled at step five.

**MAY'S CHALLENGES**

May disputes the ALJ's findings at steps two, three, four, and five of the sequential

analysis, as well as the ALJ's findings that his drug and alcohol addiction is a contributing factor

material to a finding that he is disabled.  May argues that in making these findings, the ALJ

improperly rejected the opinion of his treating physician, the testimony of two lay witnesses and

his subjective complaints of the severity of his disability, and failed to explain his divergence

from the *Dictionary of Occupational Titles*.  Because the Court concludes that the ALJ erred at

step three of the disability analysis, only the issues relevant to that step are addressed below.

**FINDINGS**

I.    **Scope of Review**

May submitted additional records to the Appeals Council which were not considered by

the ALJ, including the records dealing with at least four of his hospitalizations and much of the

medical evidence of May's physical impairments.  Although this evidence was submitted after

the ALJ issued her decision, the Appeals Council considered it when denying May's request for

review.  Tr.  5.  Therefore, it is part of the administrative record upon which this court may rely

in affirming or reversing the ALJ's opinion.  *See Ramirez v. Shalala*, 8 F3d 1449, 1451-52

(1993); *Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir), *cert denied*, 531 US 1038 (2000).

**II.**     **Step Three Analysis**

     **A.**     **Listing of Impairments**

     May contends that the ALJ erred by failing to find his condition equivalent to one of the

presumptively disabling disorders in the Listing of Impairments.  The Listing of Impairments

"describes, for each of the major body systems, impairments which are considered severe enough

to prevent a person from doing any gainful activity."  20 CFR §§ 404.1525, 416.925.[2]  A

claimant will be found disabled if his or her impairment meets or equals a listed impairment.

20 CFR §§ 404.1520(d), 416.920(d); *Lester v. Chater*, 81 F3d 821, 828-29 (9th Cir 1995).  May

does not specify which listing he believes he meets.  However, the record shows that several

physicians believed he met the criteria for Listing 12.04 for Affective Disorders.  Therefore, the

Court's analysis will focus on that listing.

     The Listing of Impairments requires specific medical findings and characteristics to

establish a diagnosis or confirm the existence of a listed impairment.  20 CFR §§ 404.1525(c),

416.925(c).  Simply obtaining a diagnosis of a listed impairment is not sufficient.  Instead, the

claimant must show that "he or she meets each characteristic of a listed impairment relevant to

his or her claim."  *Tackett*, 180 F3d at 1099; 20 CFR §§ 404.1525(d), 416.925(d).  Alternatively,

if a claimant's condition does not *meet* the requirements of a listed impairment, it nonetheless

*equals* a listed impairment if the claimant shows "symptoms, signs and laboratory findings 'at

---

[2] Citations are to those regulations in effect at the time of the hearing before the ALJ.

least equal in severity and duration' to the characteristics of a relevant listed impairment" or to the "listed impairment 'most like' the claimant's impairment." *Tackett,* 180 F3d at 1099, quoting 20 CFR § 404.1526. If a claimant suffers from multiple impairments, no one of which individually meets or equals a listed impairment, the Commissioner must evaluate the symptoms, signs and laboratory findings of all impairments to determine whether the combination of impairments medically equals a listed impairment. 20 CFR §§ 404.1523, 416.923.

For mental disorders, the Commissioner must first evaluate the pertinent symptoms, signs and laboratory findings to determine whether a claimant has a medically determinable mental impairment that satisfies the diagnostic, or paragraph A, criteria of the listing. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1); Listing of Impairments, §12.00A. Next the Commissioner evaluates the degree of functional limitation resulting from the mental impairments by utilizing the criteria in either paragraph B or, where applicable, paragraph C of the listing. 20 CFR §§ 404.1520a(b)(2), 416.920a(b)(2). The B criteria include four categories: (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence or pace; and (4) extended periods of decompensation. Listing of Impairments § 12.00C. The required level of severity is shown if the claimant establishes marked limitation in at least two of the four categories; marked impairment in the fourth category is demonstrated by repeated episodes of decompensation. 20 CFR §§ 404.1520a(c), 416.920a(c); Listing of Impairments, § 12.00C.

If the B criteria are not satisfied, the Commissioner next evaluates whether the claimant meets the C criteria. Listing of Impairments, § 12.00A. Similar to the B criteria, the C criteria describe impairment-related functional limitations that are incompatible with the ability to do

any gainful activity.  *Id.*  A claimant will be found to meet a listed impairment only by satisfying the A and B criteria or the A and C criteria.

A determination whether a claimant's condition meets or equals a listed impairment "must be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques[;]" a claimant's testimony alone is insufficient.  SSR 86-8, 1986 WL 68636, *4 (1986); *see also* 20 CFR §§ 404.1508, 404.1526-27, 416.908, 416.926-27.  The documented medical judgment of a Disability Determination Services ("DDS")[3] physician meets this requirement.  *Id.*  Although medical opinions are necessary to establish the presence of a listed impairment, the opinion of a physician is not controlling on this issue as "the final responsibility of deciding [this issue] is reserved to the Commissioner."  20 CFR §§ 404.1527(e)(2), 416.927(e)(2); *see also* SSR 96-5P, 1996 WL 374183 (July 2, 1996).

**B.**    **Medical Opinions**

**1.**    **Reviewing Psychologists**

On August 18, 2003, DDS psychologist Bill Hennings, Ph.D., completed a Psychiatric Review Technique Form ("PRTF'), based on his review of the record.  Tr. 284-97.  Dr. Hennings found that considering May's drug and alcohol addiction ("DAA"), May met Listing 12.04, but, factoring out his DAA, May had no severe impairment.  Tr. 284.  Dr. Hennings considered Listings 12.04 for Affective Disorders, 12.06 for Anxiety-Related Disorders, and 12.09 for Substance Addiction Disorders.  Under the A criteria of each of these listings, he found May had medically determinable impairments that did not precisely satisfy the criteria, namely Major

---

[3]    The Department of Disability Services ("DDS") is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 USC § 421(a) and 20 CFR § 404.1503.

Depressive Disorder, Anxiety Disorder, and polysubstance abuse and alcohol dependence.  Tr.

287, 289, 292.  He also found that May did not satisfy the B criteria either with or without

consideration of his DAA based on only moderate limitations in the first three functional

categories and only one or two episodes of decompensation even with his DAA.  However, with

his DAA, May did satisfy the C criteria of listing 12.04, specifically 12.04C.2.  Tr. 295.

When May was "clean and sober," he did not have deficits with activities in daily living

or work activity tasks.  Tr. 297.  The record showed that despite having several visits to the

emergency room for depression, May continued to use alcohol and drugs on a daily basis and

tended to decompensate under stressful situations when intoxicated.  *Id.*  Because DAA was

material to his finding of disability, Dr. Hennings opined that May was not disabled within the

meaning of the Act.

DDS reviewing psychologist Frank Lahman, Ph.D., conducted a record review and

completed another PRTF on December 10, 2003.  Tr. 298-311.  As did Dr. Hennings,

Dr. Lahman opined that including the effects of DAA, May met the paragraph A and C criteria

for Listing 12.04.  Tr. 298.  He concurred with Dr. Hennings that May suffered from Major

Depression, Anxiety Disorder, and polysubstance abuse and alcohol dependence.  Tr. 301, 303,

306.  He too found that May had moderate restrictions under the B criteria of Listing 12.04 when

including May's DAA.  Tr. 308.  He also agreed that with his DAA, May met criteria C.2. of

Listing 12.04, but without his DAA, May's condition was not severe.  Tr. 298, 309.

### 2.      Examining Psychologist

In reaching their conclusions, Drs. Hennings and Lahman relied on the opinion of May's

examining psychologist, Duane D. Kolilis, Ph.D.  Tr. 296, 310.  DDS referred May to Dr. Kolilis

in August 2003 on the specific issues of depression, panic disorder, anxiety, and possible
substance abuse.  Tr. 277-81.  Dr. Kolilis reviewed a very limited number of items from May's
medical record and interviewed May for one hour.  Tr. 277.  May related his history of physical
abuse, service in the military, use of medical marijuana for chronic pain stemming from liver
surgery, and a history of alcohol and drug abuse.  Tr. 277-78.  May admitted to drinking as
recently as "last night," admitted to smoking marijuana "this morning" and admitted to smoking
crack cocaine "three or four days ago."  Tr. 278.  He reported his daily activities as getting up at
9:30 a.m., watching television or movies and napping, and going to bed at eleven or twelve
(midnight).  Tr. 279.  His wife did the chores and handled the finances, although he did run a few
errands.  *Id*.

        Dr. Kolilis found that May "tended to endorse every problem he was asked about."  *Id*.
He opined that May's performance was "dramatic, rehearsed and exaggerated.  He tends to
blame others for his problems, and he attempts to elicit pity and care-taking responses by others
to avoid taking personal responsibility."  Tr. 281.  He concluded that May did not meet the
criteria for depression, anxiety or PTSD, but, rather, "a more accurate diagnosis is an Unknown
Substance-Related Disorder NOS to account for both his emotional problems and his hostile
behavior."  *Id*.  In his opinion, when May is "clean and sober, there are no significant deficits in
his abilities to understand and follow at least simple one-to two-step instructions, or to perform
any other mental functioning required for employment."  *Id*.  He found that May "demonstrated
no plan or motivation regarding return-to-work," would "be satisfied living on assistance," and
"would not be able to manage his money in a responsible manner due to temptations from
substance abuse."  *Id.*

3.      **Treating Physician**

Dr. Bonnie Reagan, May's primary care physician, also provided several medical
opinions addressing directly and indirectly the question of whether May fit the criteria for a
Listed Impairment.  On July 14, 2005, Dr. Reagan completed a form in response to an inquiry by
May's attorney prior to May's hearing before the ALJ.  Tr. 313-15.  She reported seeing May
since 1989 for a variety of physical and mental problems (Tr. 313), although the record only
contains treatment information beginning in January 2004.  Dr. Reagan agreed that May suffered
from chronic liver pain, depression, anxiety and substance abuse.  *Id*.  His impairments caused
him to have anxiety, shakiness, occasional disorientation, and headaches.  *Id*.  Dr. Reagan stated
that May had two marked restrictions and one moderate restriction in the first three of the B
criteria for Listing 12.04 and had experienced four or more episodes of decompensation.  Tr.
315.  She believed his marijuana use decreased his pain and anxiety and "coupled with his other
medications probably contributed to his occasional confusion and disorientation."  Tr. 314.  She
did not discuss the impact of May's alcohol abuse.

Dr. Reagan issued another opinion on October 19, 2005, after May's hearing before the
ALJ.  Tr. 440.  Her letter opinion states that over the years, May had "become increasingly
disabled for several reasons."  *Id*.  May suffered from a liver abscess which cleared up but still
caused him pain.  He also had pain in his joints, muscles, abdomen and had headaches.   In
addition, he had anxiety and PTSD from his childhood and sometimes became disoriented and
confused, in part due to the medications he was taking.  In her opinion, May's medical,
emotional and psychological problems "have really hindered his ability to work with people."
*Id*.  She did "not see much hope for him being able to do work involving fine motor work, or

13 - FINDINGS AND RECOMMENDATION

anything which requires him to be very alert" or "because of his anxiety, to be with people very much." *Id*.

Fully credited, these opinions support May's impairments meeting Listing 12.04.

**C.    ALJ's Findings**

The ALJ agreed with both DDS physicians that May suffered from medically determinable impairments since his alleged onset date, including a depressive disorder, anxiety disorder, and drug and alcohol addiction, and that he did not satisfy the B criteria of any of the pertinent listings. Tr. 19. In doing so, the ALJ rejected Dr. Reagan's July 2005 assessment because Dr. Reagan was "not a psychiatrist or a psychologist;" she had not seen May "during the entire period under consideration;" she did "not make references to evaluations which involve the use of standardized psychological testing to corroborate the degree of limitations she has opined;" and her opinion conflicted with the opinions of Dr. Kolilis and May's previous treating physician. Tr. 20.

With respect to the C criteria, the ALJ rejected the opinion of the non-examining medical sources that May met the C criteria with his DAA. *Id*. She disagreed with the findings of the DDS physicians because "there is not adequate evidence in support of this conclusion." *Id*. She pointed to evidence of only two brief psychiatric hospitalizations and evidence that May's "condition improved shortly after he began using medication for his psychological condition." *Id*. She also relied on Dr. Kolilis' opinion that May's "presentation was dramatic, rehearsed, and exaggerated." *Id*. She assigned weight to Dr. Kolilis' assessment because "it is based on objective psychological testing, and his conclusion is consistent with the bulk of the evidence in the record." *Id*.

**D.**    **Analysis**

A review of the record shows that the ALJ's decision is not supported by substantial evidence in the record.  It is apparent that the ALJ's decision with respect to the B and C criteria for Listing 12.04 was heavily influenced by Dr. Kolilis' opinion.  However, Dr. Kolilis' opinion is a singularity in the record.  First, it directly contradicts the opinion of Dr. Reagan, May's treating physician.  Generally, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." *Reddick v. Chater*, 157 F3d 715, 725 (9th Cir 1998), citing *Lester*, 81 F3d at 830.  This is "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." *Smolen v. Chater*, 80 F3d 1273, 1285 (9th Cir 1996) (citations omitted).  However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F3d 1035, 1041 (9th Cir 1995), citing *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989).

Because Dr. Reagan's opinion is contradicted in the record, the ALJ was required to give specific and legitimate reasons for rejecting it.  *Rollins v. Massanari*, 261 F3d 853, 856 (9th Cir 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record." (internal quotation marks omitted)).  She failed to do so.  To begin with, a treating physician's opinion on a claimant's psychological limitations may not be rejected merely because the physician is not a board-certified psychiatrist.  *Sprague v. Bowen*,

812 F2d 1226, 1232 (9th Cir 1987).  However, it is a proper basis for assigning weight to a conflicting opinion which is otherwise supported by the record.  *See* 20 CFR §§ 404.1527(d)(5), 416.927(d)(5).  The problem here is that Dr. Kolilis' opinion is not supported by the record, but instead conflicts with the great weight of the evidence.

Dr. Kolilis suspected that May was exaggerating or faking his symptoms.  None of the other treating or examining physicians or other mental health professionals who examined May during the course of his extensive treatment history expressed a similar sentiment.  True, some of the physicians treating May at Portland Family Practice expressed concern in May 2005 that May was possibly exhibiting drug seeking behavior.  Tr. 317, 319, 322.  In spite of this concern, they continued to prescribe him pain medication and other drugs long after making those comments, indicating that their concerns were not serious enough to consider discontinuing May's treatment.  Tr. 468-69 (½6/06), 543 (8/24/06).

Dr. Kolilis' mild diagnosis and high Global Assessment of Functioning ("GAF")[4]  is also contradicted by the weight of the record.  May has been diagnosed on numerous occasions with Major Depression, Anxiety Disorder and PTSD by various examining and treating physicians and by mental health professionals.  *See* Tr. 195-97, 210, 220, 231, 313-15, 392, 504, 568.  Dr. Kolilis' GAF finding of 75 is 15 points higher than the highest GAF in the record, and well

---

[4]  The GAF is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000).  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations.  A GAF score between 71 and 80 indicates if symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork).  *See also, Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 598 n1 (9th Cir 1999) (explaining purpose of GAF scale).

above the more common GAF scores assigned to May of 40 to 50 (Tr. 434, 504, 389-94)[5] and on

multiple occasions as low as 30 (Tr. 210, 213-14).[6]  *Id.*  The fact that multiple, unrelated service

providers consistently diagnosed May with more serious conditions and found his functional

capacity to be much lower on numerous occasions undermines Dr. Kolilis' conclusions and the

ALJ's reliance on them.  Thus, the ALJ's reliance on Dr. Kolilis' opinion is not supported by

substantial evidence in the record.

The ALJ's additional reasons for rejecting Dr. Reagan's opinion also fail.  The fact that

Dr. Reagan did not treat May for the entire period under review is not a legitimate reason for

rejecting her opinion as the ALJ does not contest that she qualifies as a treating physician who

saw May on multiple occasions.  Despite the fact that the record does not contain any treatment

notes since 2004, the full record, as considered by the Appeals Council, shows that Dr. Reagan

saw May from at least 2004 to 2007 and met with him no less than 13 times during that period.

Additionally, nothing in the record contradicts Dr. Reagan's repeated assertion that she has seen

May since 1989.  Tr. 313, 440, 538.

The ALJ correctly noted that Dr. Reagan does not reference standardized psychological

testing.  Nevertheless, her opinion is fully supported by the mental status exams given by

physicians during May's multiple hospitalizations and by the opinions of various counselors who

treated May, all of whom found May to suffer from serous depression and to have significant

---

[5]  A GAF of 41-50 indicates: "Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). DSM-IV, 32.

[6]  A GAF of 21-30 indicates that:  "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home, or friends)."  DSM-IV, 32.

17 - FINDINGS AND RECOMMENDATION

restrictions in functional capacity as expressed in their GAF scores. *See* 20 CFR §§ 404.1527(d)(4), 416.927(d)(4).

Also the ALJ was not accurate in asserting that Dr. Reagan's conclusions conflicted with May's earlier primary care physician, Dr. Michael Hudson. Dr. Hudson did not note restrictions in functioning as severe those noticed by Dr. Reagan and never filled out a form explicitly stating his findings as to May's mental limitations. However, the record shows that he felt May's symptoms were serious enough to excuse him from work twice in 2003 due to his mental illness, the first time for nearly a month (Tr. 230) and the second time for over two-and-a-half months (Tr. 227), and to recommend that May be hospitalized for acute symptoms of depression. Tr. 224. He also offered to write a letter to Social Security recommending him for disability. Tr. 227.

In light of the above, the ALJ failed to give specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Reagan's opinion. Because the ALJ improperly rejected Dr. Reagan's opinion, it should be credited as true. *Benecke v. Barnhart*, 379 F3d 587, 594 (9th Cir 2004). According to Dr. Reagan, May meets the B criteria of Listing 12.04.

Moreover, the evidence supports the conclusion that without DAA, May satisfies the C criteria of Listing 12.04 which requires:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or

      2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

      3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR Pt. 404, Subpt. P, App. 1, § 12.04C.

      The ALJ found evidence of only two brief psychiatric hospitalizations and improvement in May's condition shortly after he began using medication. Tr. 20. The ALJ also found May unreliable in recounting the seriousness of his symptoms and agreed with Dr. Kolilis that he was exaggerating. *Id.* The record does not support the ALJ's conclusions.

      First, the records before the ALJ showed three hospitalizations for depression, not two. The ALJ refers to the third as an "alleged" hospitalization (Tr. 19) because it is only referenced in treatment notes by May's mental health counselor. Tr. 405-06. However, the corresponding hospital records were submitted to the Appeals Council along with evidence of three additional hospitalizations. Tr. 495-516.

      Second, while May appears more euthymic during periods in the record, no evidence reveals that May's depression improved after taking a medicine for any significant period of time, and the ALJ cites none. Instead, the variety of medications he has taken and the changing combinations his physicians have tried over his almost six-year treatment record shows that the medications have not had much positive effect on his mood. His treating physicians have also opined that his medications contribute to his memory problems, confusion, and disorientation. Tr. 226, 314. The ALJ's conclusions also do not take into account that May underwent at least three additional hospitalizations for depression and suicidal ideation, including one apparent

suicide attempt.  Each of these hospitalizations was preceded by an increase in stress in May's life due to family conflict, the death of a friend, or the illness of his father, causing May to decompensate and seek hospitalization due to his suicidal and homicidal ideation.  In sum, the ALJ's conclusion that May does not meet the C criteria even without his DAA is not supported by the substantial evidence in the record.

However, despite the above conclusions, it does not necessarily follow that May is disabled.  Ample evidence in the record indicates that May suffers from a significant drug and alcohol addiction.  While Dr. Reagan's July 2005 opinion does address the impact of May's use of marijuana on his disability (in her opinion it relieves his symptoms), it does not address the impact of his serious struggles with alcohol abuse.  Her most recent assessment of his level of functionality specifically factors out the effects of May's DAA, yet still opines that he is disabled.  Tr. 536.  This evidence conflicts with the opinions by Dr. Kolilis and the DDS examining physicians on this issue.  Because the ALJ found against May at step three, she never addressed the effects of May's DAA at this step.  Given conflicting medical evidence on both sides of this issue, some of which the ALJ never considered, outstanding issues must be resolved before a determination of disability can be made.  *See Harman*, 211 F3d at 1178.

In addition, the more recent medical evidence in the record, which was not before the ALJ at the time of her decision, indicates that May's physical limitations may be more severe than the ALJ found them to be.  These impairments must be considered along with May's mental impairments to determine whether his condition meets or equals a Listed Impairment.  20 CFR §§ 404.1523, 416.923.

///

20 - FINDINGS AND RECOMMENDATION

E.    **Conclusion**

The ALJ's decision that May did not meet Listing 12.04 is not supported by substantial evidence.  However, because the ALJ did not assess the impact of May's DAA at this step, this case should be remanded for further analysis on this point.

Because the ALJ erred at step three, this Court does not consider the reasons the ALJ gave for rejecting Dr. Reagan's opinion concerning May's RFC at step four.  The most current assessment (Tr. 536-38) repeats Dr. Reagan's assertion that May does not possess the RFC to perform even part-time work.  Furthermore, the form on which she gave her opinion specifically instructed her not to include any restrictions that were due to drug and alcohol abuse.  Tr. 536.  Therefore, her most recent opinion directly conflicts with the ALJ's assessment of May's RFC and must be considered on remand if the ALJ finds May not disabled at step three.

## RECOMMENDATION

The Commissioner's decision should be REVERSED and this case REMANDED for further proceedings as set forth above.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due August 29, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

///

///

///

///

21 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 14th day of August, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge